1  Michael T. Carr, CSBN 183085
   LAW OFFICES OF MICHAEL T. CARR, APC
2  2670 Myrtle Avenue, Suite 106
3  Monrovia, CA 91016-5077
   Telephone: (626) 254-8901
4  Facsimile: (626) 254-8921
   Email: mike@michaelcarrlaw.com
5
6  Attorneys for Plaintiff, ASHLEY PAREDES
   class representative and for the Class
7

8

9              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
10

11  ASHLEY PAREDES, an individual and class    )  Case No.: 5:14-cv-02554-SVW-SPx
12  representative on behalf of herself and all  )
    others similarly situated,                   )
13                                               )  FIRST AMENDED CLASS ACTION
                    Plaintiff,                   )  COMPLAINT:
14                                               )
                                                 )  1.  UNFAIR AND DECEPTIVE BUSINESS
15          vs.                                  )      PRACTICES IN VIOLATION OF THE
16                                               )      BUSINESS AND PROFESSIONS CODE
                                                 )      §17200 et al.,
17  THE UNIVERSITY OF PHOENIX, INC., a           )  2.  VIOLATION OF CONSUMER LEGAL
18  business entity doing business in California;  )      REMEDIES ACT §17500 et seq.
    APOLLO EDUCATION GROUP, INC., a              )  3.  FRAUD or DECIET
19  business entity doing business in California  )  4.  INJUNCTIVE and DECLARTORY
    and DOES 1 through 100, Inclusive,           )      RELEIF PER §17200 et al.,
20                                               )  5.  BREACH OF FIDUCIARY DUTY
21              Defendants.                      )
                                                 )  DEMAND FOR JURY TRIAL
22                                               )
23  ──                                          )

24         Plaintiff, ASHLEY PAREDES, an individual and class representative on behalf of herself

25  and all others similarly situated, (the "Class"), hereby demands a jury trial and complains and

26  alleges as follows:

27  ///

28

                                    -  1

## INTRODUCTION

1.      This First Amended Class Action complaint is brought by Plaintiff, ASHLEY PAREDES, ("class representative for "Plaintiffs"), on her behalf and on behalf of other individuals similarly situated,  (collectively referred to as "Plaintiffs" or the "Class"), against Defendant THE UNIVERSITY OF PHOENIX, INC., ("UNIVERSITY OF PHOENIX" or "UOP"). Plaintiff is informed and believes, and based thereupon, alleges, that all times relevant hereto Defendant UNIVERSITY OF PHOENIX is a subsidiary of Defendant APOLLO EDUCATION GROUP, INC., was and is owned by APOLLO EDUCATION GROUP, INC.

2.      Plaintiff is informed and believes, and based thereupon, alleges, that all times relevant hereto that Defendant APOLLO EDUCATION GROUP, INC., was and is the parent corporation of Defendant UNIVERSITY OF PHOENIX, and is doing business in California, and owned, managed, controlled and operated Defendant, UNIVERSITY OF PHOENIX through common management, common ownership and entities.

3.      This Class Action is brought forth as a result of the fraudulent and deceptive business practices carried out by Defendant upon hundreds of unsuspecting students (Plaintiff's in the Class) whom were essentially sold a "pipe dream" by sophisticated recruiters or high pressure salespersons employed at UOP.  However, along with this pipe dream students were sold, came a heavy price. This price came in the form of the large Federal loans, which students were duped into taking on in order to pay the exorbitant tuition charged by UOP for a substandard education, not being able to find employment related to their education from UOP, and not obtaining transferrable credits.

4.      UOP's high pressure recruiters/salespersons, who are euphemistically referred to by UOP as Admissions Representatives or recruiters used aggressive, deceptive, misleading and

fraudulent tactics in order to persuade students to enroll with UOP. These aggressive and deceptive sales tactics by UOP's admissions representatives/recruiters have convinced numerous students of the Class into taking on large debt, in the form of federal loans, in an amount far beyond their ability to repay. Additionally, as a result of the deceptive and coercive sales tactics used by UOP's recruiters, students envisioned obtaining an education that would lead them to begin a lucrative career immediately following completion of UOP's various educational programs. Students were specifically informed that in applying and competing for jobs after completion of UOP's educational programs, they were guaranteed employment upon graduating from UOP. Furthermore, these students were also led to believe that they could transfer all units earned at UOP to any other college, including all four year universities, if they chose to further their education in no matter which educational program at UOP, the student enrolled in.

5.     However, many of the students of the Class, have not been able to achieve the educational goal that motivated them to enroll at UOP, as many of them have simply not been able to complete UOP s programs due to the substandard education they received at UOP, or have not been able to obtain work after graduation, in the field related to the education they received at UOP. Additionally, several members of the Class who choose to continue their education or obtain a degree from another college were later shocked to learn that they were unable to transfer credits from UOP to other colleges or universities and higher learning institutions including the California state university system. Furthermore, those students who chose to pursue their education at other colleges and universities are unable to obtain federal funding until they have paid off the loans accrued from UOP. Therefore, many of these students are caught in a "catch 22" type situation. That is, because students are unable to pay for the cost of UOP's tuition, they are pressured by the UOP's recruiters to take on federally funded student

loans adding up to amounts into the tens of thousands of dollars in order to pay for UOP's exorbitant tuition.  Consequently these students have: 1) received a substandard education at UOP, 2) have not been able to find employment, 3) and, are consequently unable to pay back the loans.  Adding to their dilemma, these students have to first pay off the loans taken out for UOP tuition before they can qualify for any other loans st a reputable college or university. Consequently, because these students can not find gainful employment due to the substandard education they received from UOP, they are unable to pay off their student loans incurred from UOP's tuition, and are therefore unable to obtain loans for an education at a reputable college. Instead students are stuck with a worthless degree, and/or earned credits, heavy debt and little or no chance of finding employment. UOP has essentially used students as a conduit for receiving federal money, by siphoning money from the taxpayers and the federal government and consequently ruining careers of students, ruining the credit of students and their families, along with straddling students with a lifetime of debt.

      6.     Between 1998-9 and 2008-9, the enrollment at for-profit schools increased by 236 percent, while growth at other non-profit colleges and universities totaled approximately twenty (20) percent.[1] For-profit colleges are a $30 billion a year industry with as much as 90 percent of its revenue coming from student loans and grants, funded by the federal government UOPording to the Government Accountability Office, (GAO).  Additionally, the demographics of those whom take on Pell Grant loans mainly consist of individuals who come from a lower socio-

---

[1] *Education Trust analysis of Integrated Postsecondary Education Data System*, (Washington, D.C.: U.S. Department of Education, National Center for Education Statistics). *http://nces.ed.gov/ipeds/*

economical background, within the age range of 18 to 30, and most of whom have no education beyond high-school and a significant portion do not even have a high-school diploma. [2]

7.     To cover the high cost of tuition, almost all students at for-profit schools must borrow. In fact the cost of attendance at for-profit schools is so high that most students must max out their federal loan limits. Students from for-profits schools represent 43 percent of all federal student loan defaults.[3] The consequences of default are severe. For example, defaulted student loans will appear on student's credit record, which will further make it difficult to obtain an auto loan, mortgage and credit cards at competitive lending rates. Student loan debt is not dischargeable in bankruptcy, so it can follow students for a lifetime. Students who have defaulted on student loans will also be ineligible to receive any additional Title IV federal educational funding until the loan is repaid in full. There are further consequences as defaulters of student loans can have their wages garnished, income tax refunds intercepted, and their Social Security payments withheld. For-profits schools enroll students in exorbitantly high-cost degree programs that statistically have been shown to provide little or no chance of leading to high-paying careers or even employment, and, have saddle the most vulnerable students with more debt than they can reasonably manage to repay, even if they do graduate.[4]

/ / /

---

[2] Statistics from Government Accountability Office; The Education Trust *Subprime Opportunity, The Unfulfilled Promise of For-Profit Colleges and Universities*, By Lynch, Jennifer Engle, and Jose L. Cruz, November 2010

[3] Senate Committee on Health, Education, Labor, and Pensions, "Emerging Risk?" "Institutional Default Rate Comparison." *http://www2.ed.gov/offices/OSFAP/defaultmangement/instrates..html*

[4] The Education Trust *Subprime Opportunity, The Unfulfilled Promise of For-Profit Colleges and Universities*, By Lynch, Jennifer Engle, and Jose L. Cruz, November 2010.

## PARTIES.

**The Plaintiffs:**

8.     Plaintiffs include the class representative, ASHLEY PAREDES, and all former and current students of Defendant UNIVERSITY OF PHOENIX, ("UOP"), who were at all relevant times residents of California who enrolled between November 10, 2011 through November 10, 2014, in UOP's educational programs for Psychology, Education, Nursing, Health Administration and Criminal Justice, and Technology, through both online and/or attending at a campus/learning center, including those enrolled for obtaining an Associates of Arts degree, Bachelors Degree and Masters Degree at UOP.

**Plaintiff Class Representative:**

9.     Plaintiff ASHLEY PAREDES, (who is the Class Representative), was formerly enrolled as an online student in the Associate of Arts Psychology program through Defendant UOP's, Ontario, California campus location.  Plaintiff was a twenty two year old mother of three children at the time she enrolled at UOP. More specifically, when Plaintiff met with an Admissions Representative from UOP, sometime on or about July 17, 2012, Plaintiff specifically informed the Admissions Representative, (Terry Eubanks) that she previously attended another college and learned that the credits she had earned at this other college were not transferable to other colleges or universities, including all colleges in the California state university system. During this meeting with the Admissions Representative, or recruiting process, Plaintiff specifically informed the Admissions Representative, Eubanks, *inter alia,* that she was concerned about whether or not the credits earned at UOP would be transferable to other universities including the California state universities and if credits earned at UOP could be used to take the standardized Licensure test administered in California to become a licensed

counselors/therapists and psychologists. During this same recruiting process, Plaintiff specifically informed the Admissions Representative that she intended on transferring to another university in California within the California state university system to obtain an advanced degree, and, Plaintiff specifically informed the Admissions Representative that it was imperative that she would be able to transfer any credits she earned at UOP, to a college within the California state university system and that earned at UOP could be used to take the standardized Licensure test administered in California to become a licensed counselors/therapists and psychologists.  During this recruiting process, Plaintiff specifically informed the Admissions Representative that her educational goals were to complete her Bachelors Degree and Masters Degree, so that she could become a Licensed Psychologist or therapist/counselor.  Plaintiff also specifically informed the Admissions Representative that she needed to later be able to transfer to a college in the California state university system to further her education. In response to Plaintiff's statements of her educational goals and requirements that her enrollment was conditioned on, the UOP's Admissions Representative specifically informed Plaintiff that UOP offers the right accreditation and credentials for Plaintiff to become a licensed Psychologist and to obtain any job in the field of psychology, and, that any credits earned at UOP would be transferable to any other college in the state of California or elsewhere, and, that this would not be a problem and for Plaintiff not to worry about any of that.  Plaintiff justifiably relied on these assurances and representations made by the Admissions Representative. Based on and in reliance of these representations assurances made to Plaintiff by the Admissions Representative, Plaintiff made the decision to enroll at UOP.  Had Plaintiff known that these assurances and representations made by the Admissions Representative were false Plaintiff would not have enrolled at UOP.  During this same meeting or recruitment process, the Admissions

FIRST AMENDED CLASS ACTION COMPLAINT

Representative did not disclose any type of assessment regarding what Plaintiff's financial ability

to repay the student loan debt, (she would incur via federal funding), would be. In fact the

Admissions Representative did not discuss that issue at all.

　　　　Furthermore, the Admissions Representative did not disclose any statistics regarding

former UOP students who have defaulted on their loans, or anything to do with the financial

impact that befalls students as a result of the debt they incur through school loans.  During this

recruitment process, the Admissions Representative purposely failed to disclose information that

the Admissions Representative knew would likely dissuade and discourage Plaintiff from

enrolling at the UOP.  During this same recruitment process, the Admissions Representative's

main objective was to enroll Plaintiff at the UOP regardless whether or not enrollment at the

UOP was in the best interest of Plaintiff.  The Admissions Representative knew that revealing

certain information that he was obligated to explain would not be conducive to making the sale.

Specifically, the Admissions Representative did not explain to Plaintiff what the interests rates

on the loans would be, the likelihood as to the amount of payments Plaintiff would incur after

graduation, or how interest would be compounded and calculated. During this same recruiting

process, the Admissions Representative specifically assured that Plaintiff was guaranteed to

obtain employment upon completion of her education at UOP.  Immediately following the above

described recruiting process -which lasted for approximately thirty (30) minutes – the

Admissions Representative guided Plaintiff through the completion of the computer based

application process at UOP, and the application process at UOP for Plaintiff to receive federal

financial aid via FAFSA.   During this same recruiting process, the Admissions Representative

further informed Plaintiff that he was very knowledgeable about the educational system and the

job market and was someone who was looking out for Plaintiff's best interest to help her achieve

her academic goals and to obtain employment.  Based on these representations made by the Admissions Representative, Plaintiff justifiably perceived the Admissions Representative as someone who was looking out for her best interest, as someone in a position of authority and knowledge, and, therefore trusted representations made by the Admissions Representative. Plaintiff justifiably relied on these assurances and representations made by the Admissions Representative. Based on and in reliance of these representations and assurances made to Plaintiff by the Admissions Representative, Plaintiff made the decision to enroll at UOP.  Had Plaintiff known that these assurances and representations made by the Admissions Representative were false and had Plaintiff been made aware of these omissions by the Admissions Representative, Plaintiff would not have enrolled at UOP.

After attending UOP for approximately 9 months, and after incurring approximately $12,000.00 in federal student loan debt to pay for UOP's tuition, Plaintiff learned and was informed and believes and alleges that the units she earned at UOP were not transferable to other universities in the California university system, and, that those units Plaintiff earned at the UOP could not be used towards obtaining and taking the Licensure test to become a licensed therapist/counsel or psychologist. Based on this information, Plaintiff informed the UOP that the units she earned at UOP were not transferable to other universities in the California university system, and, that those units Plaintiff earned at the UOP could not be used towards obtaining and taking the Licensure test to become a licensed therapist/counsel or psychologist, and demanded that the UOP refund her tuition. Despite Plaintiff's demand, the UOP has refused to refund Plaintiff any monies incurred for tuition paid to UOP.

/ / /

/ / /

**Defendants:**

10.     Defendant UNIVERSITY OF PHOENIX, is, and at all relevant times was, a corporation with a place of business, in California 92626.  Defendant, UOP, has five campuses and twenty-four learning centers located throughout California, with an overall enrollment of approximately 10,000 students annually. Defendant UOP is, and at all relevant times was, a corporation in the state of Arizona and doing business in California as a for-profit college and additionally subject to the provisions of the *California Private Post Secondary Education Act of 2009, Cal. Education Code* §§94700 et seq.

11.     Plaintiff is informed and believes, and based thereupon, alleges, that all times relevant hereto that Defendant APOLLO EDUCATION GROUP, INC., was and is the parent corporation of Defendant UNIVERSITY OF PHOENIX, and is doing business in California, and it  owned, managed, controlled and operated Defendant, UNIVERSITY OF PHOENIX through common management, and/or common ownership and entities.

12.     Plaintiff is informed, believes, and alleges that, at all times herein mentioned, Defendants, and each of them, were the agents or employees of each of the other Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency and/or employment and with the permission and consent of his/her co-Defendants.

13.     Plaintiff and the represented Class is ignorant of the true names and capacities, whether individual, corporate, or associate, of those defendants fictitiously sued as DOES 1 through 100 inclusive and so the Plaintiff sues them by these fictitious names. The Plaintiff is informed and believes that each of the DOE defendants reside in the State of California and are in some manner responsible for the conduct alleged herein. Upon discovering the true names and

capacities of these fictitiously named Defendants, the Plaintiff will amend this complaint to show the true names and capacities of these fictitiously named defendants.

## JURISDICTION

14.    That venue is proper under *Code of Civil Procedure section* 395, in that Plaintiff's the alleged conduct giving rise to the allegations in this complaint and many of the activities giving rise to the causes of action have substantially taken place within the County of San Bernardino, and one or more the named Plaintiff is a resident of the County of San Bernardino.

## CLASS ACTION ALLEGATIONS

(Against Defendants THE UNIVERSITY OF PHOENIX, INC.; APOLLO EDUCATION

GROUP, INC., DOES 1 through 100)

15.    Plaintiff, ASHLEY PERADES, ("class representative for Plaintiffs of the "Class"), brings this action on behalf of herself and all others similarly situated as a class action pursuant to *California Civil Code of Procedure* §382. The Class members that Plaintiff seeks to represent consist of individuals who, were at all relevant times residents of California, enrolled at the UNIVERSITY OF PHOENIX in UOP's educational programs for Psychology, Education, Nursing, Health Administration and Criminal Justice, and Technology, through both online and/or attending at a campus/learning center, including those for the Associates of Arts degree, Bachelors Degree and Masters Degree.

16.    Plaintiff reserves the right under Rule 3.674, *California Rules of Court*, to amend or modify the class description with greater specificity or to divide class into further subclasses of limitations specific to particular issues.

17.    This action has been brought and may properly be maintained as a class action pursuant to the provisions of *California Civil Code of Procedure* §382 because there is a well

defined community of interest in this litigation and the proposed Class is easily ascertainable. The questions of law or fact common to the Class members predominate over any question of law or fact affecting only individual members of the Class. These predominate questions of law of fact are clear, precise, well defined and applicable to the Class representative and to every member of the proposed Class.

18.     Class representation in this action is superior to other available methods for several reasons, including but not limited to, (1) class members would not have the resources to bring claims individually, (2) prosecution of separate claims by individual members of the Class would create the risk of inconsistent adjudications which would result in incompatible standards of conduct of Defendant, and, (3) would be an inefficient use of scarce judicial resources to require each student affected by the deceptive practices alleged herein to bring his or her own individual claim.

Numerosity:

19.     The potential members of the Class as defined are so numerous that joinder of of the members of the Class is impracticable.  The precise number of Class Members has not been determined at this time, but is believed to be in excess of approximately 10,000 individuals.

20.     Upon information and belief, Plaintiff alleges Defendant's internal records, along with other investigatory procedures through discovery, will provide information as to these other Class members.

Typicality and Commonality:

21.     Plaintiff's claims are typical of the claims of the Class because the Class members were induced to enroll at UOP in justifiable reliance on the affirmative misrepresentations, deceptive statements and acts of purposeful concealment carried by UOP's representatives.

22.     Common question of law and fact to the Class predominate over any questions affecting only individual members of the Class, including, but not limited to:

a)      Whether Defendant UOP engaged in deceptive practices and high pressure recruiting tactics which induced students of the Class to enroll in UOP's educational programs for Psychology, Education, Nursing, Health Administration and Criminal Justice, and Technology, by intentionally deceiving prospective students of the Class by making the false representation that the credits earned at UOP, could be transferable to all other universities or other educational institutions of higher learning and whether the students of the Class made their decision to enroll at the UOP based on and in reliance of said false representations by Admissions Recruiters at the UOP;

b)      Whether UOP intentionally mislead students of the Class by purposefully omitting material information needed by students in making the decision to enroll in UOP, by falsely informing students of the Classs that credits earned at UOP would be transferable to all other universities, including the California state university system, and by purposely failing to disclose to prospective students of UOP's educational programs, that credits earned at UOP would not be transferable to all other universities, including the California state university system, and whether the students of the Class made their decision to enroll at the UOP based on and in reliance of said false representations by Admissions Recruiters at the UOP;

c)      Whether students enrolled in UOP's Psychology program could use credits earned at UOP, towards taking the standardized test for obtaining a license in California to become a counselor/therapist or psychologist and whether the students of

the Class made their decision to enroll at the UOP based on and in reliance of said false representations by Admissions Recruiters at the UOP;

    d)    Whether UOP's Admission Recruiters engaged in fraudulent high pressure sales tactics to induce students to enroll in its educational programs, by intentionally misrepresenting information regarding the transferability of UOP'S credits to other universities, including the California state university system and other educational institutions of higher learning, and/or intentionally omitting information regarding the transferability of UOP'S credits to such other colleges, universities and other higher learning institutions;

    e)    Whether UOP violated *California Private Post Secondary Education Act of 2009*, ("Post Secondary Education Act of 2009"), Cal. Education Code § 94897 by promising or to guaranteeing the employment or otherwise overstating the availability of jobs upon completion, and, whether UOP compensated its employees on the basis of a commission, commission draw, bonus, quota, or other similar method related to the recruitment, enrollment, admissions student attendance, or sales of educational materials to students;

    f)    Whether UOP's conduct violated section 17200 et seq., of the *Business and Professions Code* by engaging in deceptive and unlawful business practices as described above;

    g)    Whether UOP's conduct violated section 17500 et seq., of the *Business and Professions Code* by engaging in deceptive marketing and deceptive and/or false advertising practices aimed at prospective students, as described above;

h)    Whether UOP violated the Consumer Legal Remedies Act, *California Civil Code* section 1750 et seq., by engaging in deceptive marketing and deceptive and/or false advertising practices aimed at prospective students, as described above;

i)    Whether the Class is entitled to equitable relief pursuant to section 17200 et seq., of the *Business and Professions Code*.

Adequacy:

23.    The named Plaintiff will vigorously pursue the claims on behalf of herself and other students similarly situated. Counsel who brings this action is competent for the Class and experienced in Class action practice and procedure.

24.    A class action is superior for achieving the fair and efficient adjudication of these claims. Prosecution of separate actions or claims by individual members of the Class would create the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for the Defendant.

**GENERAL ALLEGATIONS**

(Against Defendants THE UNIVERSITY OF PHOENIX, INC.; APOLLO EDUCATION GROUP, INC., and DOES 1 through 100)

25.    Plaintiff alleges upon information and belief that UOP, like most for-profit educational corporations, receives most of its revenue from federal financial aid sources such as from various types of Title IV programs including Stafford Loans, and other Federal Supplemental Educational Loans.

26.    To continue receiving federal monies, Defendant has engaged in illegal, unfair, and deceptive conduct to further its goal of enrolling as many students as possible in its

programs, and all in violation of the *California Private Post Secondary Education Act of 2009, Cal. Education Code* §§94700 et seq., in order to receive the most amount of federal funding via enrolled students.

27.     Defendant's illegal, unfair, and deceptive conduct carried out to further its goal of enrolling as many students as possible in its programs and consequently to be able to maximize the amount of federal funding it receives, is also in violation of the *California Private Post Secondary Education Act* of 2009, *Cal. Education Code* §§94700 et seq.

28.     In order to further its goal of increased profits, Defendant, UOP, created a culture of fraud and deception through its sophisticated high pressure salespersons (or "Recruiters"), upon naïve and unsuspecting students and took advantage of its unequal bargaining power over these enrolling students.

29.     Plaintiff and the Class allege that these so-called Admissions Representatives or Recruiters, ("Recruiters"), were actually sophisticated high pressured salespersons. These Recruiters were compensated on a quota driven policy orchestrated by UOP and APOLLO EDUCATION GROUP, INC., and, therefore zealously driven to enroll as many students as possible, regardless of the particular circumstances of these students and regardless of the consequences and financial impact that would befall these students. Once a prospective student contacted Defendant, Recruiters would immediately initiate overly aggressive hard sell tactics, including pressuring students to make an immediate decision to enroll and to complete the enrollment process and immediately begin the process for taking out federal loans to pay for UOP's tuition.  This quota driven conduct by Defendant was further demonstrated by awards and bonuses and other financial incentives given to UOP's top producing Recruiters. Defendant's Recruiters employed an array of sophisticated and high pressure sales tactics to convince

unsuspecting students to enroll. One of the primary methods used by Defendant and its Recruiters to achieve this goal was by ostensibly forming a fiduciary or caring relationship with the students and creating a false bond of trust with the students. The students perceived Defendant's Recruiters as someone who was looking out for their best interest, as someone in a position of authority and knowledge, and, therefore trusted representations made by these Recruiters.

30.     The deceptive profit driven conduct by UOP's Recruiters was promoted, fostered and condoned by Defendants, APOLLO EDUCATION GROUP, INC., and UOP, as both Defendants along with its Recruiters reaped the financial benefits from the volume of students enrolled. Through methods of subterfuge and subtle deceptive techniques, Recruiters were skilled at avoiding prospective students' direct questions regarding: 1) the transferability of units earned at UOP to other universities, 2) an accurate assessment of the job market and employment opportunities for students who complete Defendant's educational programs, 3) the statistical probability of students obtaining employment based on their education received at UOP, 4) a fair and accurate assessment of the financial capability the students will have of being able to repay the debt students incur via federal funding and other school loans and the statistics regarding former UOP students who have defaulted on their loans, 5) the financial impact on students straddled with tens of thousands of dollars of debt in school loans. Said Recruiters of UOP would give evasive and/or vague responses to questions regarding these issues and/or skillfully change the subject when confronted with such questions, as part of their high pressure sales techniques.

31.     Instead of providing direct and accurate answers to these questions, after gaining the trust of these prospective students, Defendant and its Recruiters would paint a picture for prospective students of a dream-come-true scenario after graduation. UOP targeted and profiled

these naïve and unsuspecting prospective enrolling students to make the hard sell. UOP's

Recruiters specifically represented and led to prospective students to believe that they could

transfer credits to any and all universities, that students were guaranteed immediately upon

graduation to find a high paying job and begin their successful career in that field, and that they

would have no problem in repaying their student loans.  Using calculated and sophisticated high

pressure sales techniques, Defendant targeted and preyed upon unsuspecting students, and,

consequently lured these students into paying exorbitant tuition for a substandard education,

along with getting stuck with a lifetime of debt.

32.    The false representations made by Defendant to the Class, included stating:

a)    That the credits earned at UOP, could be transferable to all other

universities and higher learning institutions, that all other universities and

institutions of higher learning would honor credits that students obtained

from UOP; and

b)    That students in UOP's Psychology program could use the credits earned

from UOP towards taking the standardized licensure test for obtaining a

license in California to become a counselor/therapist or psychologist;

c)    · That graduates of UOP were guaranteed employment in high paying

careers, immediately after graduation;

33.    Defendant engaged in an aggressive and calculated marketing scheme upon

prospective students, comprised of very specific misleading statements, omissions of material

fact, misleading innuendoes and implications, leading students to believe they would receive the

most superior education in the field of study offered at UOP, that they would be continuously

employed in the field related to their studies at UOP, and by attending UOP, students would be financially secure for the rest of their lives.

34.     Instead, the Class members received a degree or earned units from UOP that was essentially worthless in the job market and not recognized by other colleges and universities. The tuition charged by Defendant UOP was exorbitant, and left students with a either earned credits that were not transferable, could not be used towards taking the Licensure exam for psychologists/therapist, and, degree that did not enable them to be competitive in today's job market. Consequently Class members were further straddled by overwhelming debt in the form of loans from the Federal Government and other sources, taken out to finance the excessively high tuition for a substandard education and useless credits and/or diplomas they received from UOP.

35.     In order to lure prospective students into its programs, Defendant along with its Recruiters and/or Financial Aid Officers purposefully and intentionally failed to explain to students the financial ramifications regarding the loans they had to take out in order to attend UOP. More specifically, Defendant purposefully failed to explain what the interests rates on the loans would be, the likelihood as to the amount of payments students would incur after graduation, how interest would be compounded and calculated.  In furtherance of its deception and in order to create the "pipe dream" vision, Defendant intentionally failed to disclose this information to prospective students, in order to lure these prospective students in. UOP instead assured prospective students that they would make an abundance of money and that it would enable these students to easily pay back the loans. Defendant purposefully failed to informed prospective students of the statistics for the number of students who remained unemployed long

after graduating from UOP and regarding the number of former students who have defaulted on their federal loans.

36.     Instead of looking out for the best interest of prospective students, Defendant has used students as a conduit for receiving federal monies.  Regardless of the consequences to students, Defendant has placed corporate profits over the welfare of enrolling students and have pressured students into taking out large loans knowing of high probability that many of these students will not be able to find employment and will consequently default on their federal student loans.

## FIRST CAUSE OF ACTION

### (Unfair Competition Law)

### (Bus. & Prof. Code § 17200, "UCL")

(Against Defendants THE UNIVERSITY OF PHOENIX, INC.; APOLLO EDUCATION

GROUP, INC., and DOES 1 through 100)

37.     Plaintiff and on behalf of the Class herein incorporates and realleges by reference all preceding paragraphs, and each and every part thereof, in this Complaint with the same force and effect as though set forth at length herein.

38.     Plaintiff is a "person" within the meaning of *Bus. & Prof. Code* § 17204, and therefore has standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

39.     The Unfair Competition Law, ("UCL"), as define per Bus. & Prof. Code § 17200, *et seq.*, prohibits "unfair competition," as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." The UCL further provides for injunctive relief and restitution for violations under the UCL. "The unfair

competition statute is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct." *Hewlett v. Squaw Valley Ski Corp.*, (1997( 54 Cal App 4th 499, 520.

40.   UOP has violated statutes and public policies including *Bus. & Prof. Code* §17200 et seq.  Through the conduct alleged in this Complaint, UOP has acted contrary to these public policies and statutes, by making or causing to be make or disseminated misleading statements and material omissions of fact to prospective students, by making the false representation that the credits earned at UOP, could be transferable to any other universities, and, could be used towards taking the standardized test for obtaining a license in California to become a counselor/therapist or psychologist, and by purposely failing to disclose to prospective students of the Psychology program, that all credits earned at UOP would not be transferable to any other universities, including the California state university system, and could not be used towards obtaining a license in California to become a licensed counselor/therapist or psychologist;.

41.   The material misrepresentations and acts of concealment, as described above in this Complaint, by UOP are unlawful, unfair and/or deceptive and fraudulent business practices has misled and deceived the public and including prospective students in the past and will continue to mislead and deceive the public in the future.

42.   Defendants' conduct, as alleged hereinabove, constitutes unfair competition laws in violation of *Bus. & Prof. Code* §17200 et seq.

43.   As a direct and proximate result of UOP's deceptive and unlawful acts, Plaintiff and the Class member have including the students who have enrolled in UOP have been injured. Defendant, by engaging in the conduct herein alleged, either knew or in the exercise of reasonable care should have known that the conduct was unlawful.  This false and/or misleading

and deceptive conduct and practice by UOP that has been ongoing, was carried out with the intent of inducing the general public, including Plaintiff and the member of the Class to enroll at UOP. As such, it is a violation of *Calif. Bus. & Prof. Code* § 17200.

44.    Under *Calif. Bus. & Prof. Code* §17200 et seq., Plaintiff and the Class are entitled to enjoin UOP's wrongful and deceptive practices and to obtain restitution for the monies paid to UOP by reason of UOP's unlawful, unfair and/or deceptive acts and practices, as described above in this Complaint, and as described in paragraphs 13, 14 of this Complaint.

45.    UOP's unlawful, fraudulent and deceptive practices, continue to threaten to members of the Class and the general public, in so much as UOP will continue to commit said violations of *Bus. & Prof. Code* §17200 et seq., unless enjoined from continuing such unlawful, fraudulent and deceptive conduct.

46.    Unless restrained by this Court, UOP will continue to engage in the unlawful conduct as alleged above.  Pursuant to the *California Bus. & Prof. Code* §17200 et seq., this Court should make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment, by Defendants, their agents or employees, of any unlawful or deceptive practice prohibited by the *Business & Professions Code*, and/or, including but not limited to, disgorgement of profits which may be necessary to restore Plaintiff and the Class members to the money UOP have unlawfully obtained through deception and unlawful acts.

## SECOND CAUSE OF ACTION

**(VIOLATION OF CONSUMER LEGAL REMEDIES ACT, *Calif. Civ. Code* §.1750)**

(Against Defendants THE UNIVERSITY OF PHOENIX, INC.; APOLLO EDUCATION

GROUP, INC., and DOES 1 through 100)

47.     Plaintiff and on behalf of the Class herein incorporates and realleges by reference all preceding paragraphs, and each and every part thereof, in this Complaint with the same force and effect as though set forth at length herein.

48.     The Consumer Legal Remedies act ("CLRA"), is designed "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.  CRLA makes it unlawful, *inter alia,* to use any deceptive and/or fraudulent representations in connection with goods or services, undertaken by any person in the transaction intended to result or which results in the sale of goods or services to any consumer. *Calif. Civ. Code* § 1750(4).

49.     UOP violated the Consumer Legal Remedies Act by providing false information to prospective students regarding the school's accreditation and transferability of educational units earned at UOP.

50.     Accordingly, Plaintiff and each member of the Class have been damaged by incurring federal loan debt into the tens of thousands of dollars and spent time pursuing their education at UOP in reliance and based on the false and misleading statements communicated to these students, and, the high pressure sales tactics implemented by UOP's recruiters towards the Class members, during the recruitment process by UOP's recruiters. Had Plaintiff and the Class members know of the falsity of Defendant's statements, they would not have enrolled at UOP.

51.     UOP's wrongful acts and practices as alleged above, were done knowing, willfully, oppressively, intentionally malicious and fraudulently carried out for the express purpose of increasing profits through generating millions of dollars in federal loan monies all at the expense of defrauding and damaging Plaintiff and the Class members. As a result Plaintiff and the Class members are entitled to punitive damages.

52.     This Complaint hereby constitutes written notice, as required by *California Civil Code* §1782 to UOP, that Defendant UOP has violated the CLRA by engaging in deceptive, unfair and fraudulent practices to remedy the herein described violations of the CLRA. By this notice Plaintiff and the Class members demand UOP to correct the herein described violations within 30 days from receipt of this Complaint.

53.     If UOP fails to cure, correct or otherwise rectify the herein described violations of the CLRA, within 30 days from receipt of this Complaint, this Complaint will be amended accordingly to reflect such facts.

### THIRD CAUSE OF ACTION

(FRAUD or DECEIT, *Calif. Civil Code* §§1572, 1709)

(Against Defendants THE UNIVERSITY OF PHOENIX, INC.; APOLLO EDUCATION

GROUP, INC., and DOES 1 through 100)

54.     Plaintiff and on behalf of the Class herein incorporates and realleges by reference all preceding paragraphs, and each and every part thereof, in this Complaint with the same force and effect as though set forth at length herein.

55.     As part of UOP's recruitment process, UOP has engaged in a pattern and practice of knowing and willfully making false representations of material fact and/or omissions of material fact with the intent to deceive prospective students and to induce reliance on the false representations and/or material omissions to induce reliance by the Plaintiff and the Class members.

56.     Fraud consists of acts committed by a part to the contract with intent to deceive another part thereto, or to induce him or her to enter into the contract. *Calif. Civil Code* §1572.

57.     Tortious fraud or deceit occurs when a party willfully deceives another with the intent to induce that party to alter his or her position to his or her injury or risk. A party causing fraudulent deceit liable for any damage which the deceived party suffers. *Calif. Civil Code* §1709.

58.     UOP engaging in fraudulent conduct by making misleading and deceptive and false statements, and/or by intentionally and knowingly omitting material information to Plaintiff and the Class members, thereby inducing prospective students of the Class to enroll at UOP and to incur debt into the tens of thousands of dollars in order pay the exorbitant tuition for a substandard education.

59.     Accordingly, Plaintiff and each member of the Class have been damaged by incurring federal loan debt into the tens of thousands of dollars and spent time pursuing their education at UOP in reliance and based on the false and misleading statements communicated to these students, and, the high pressure sales tactics implemented by UOP's recruiters towards the Class members, during the recruitment process by UOP's recruiters. Had Plaintiff and the Class members know of the falsity of Defendant's statements, they would not have enrolled at UOP.

60.     UOP's wrongful acts and practices as alleged above, were done knowingly and intentionally. Oppressive, intentionally malicious and fraudulent carried out for the express purpose of increasing profits through generating millions of dollars in federal loan monies all at the expense of defrauding and damaging Plaintiff and the Class members. As a result Plaintiff and the Class members are entitled to punitive damages.

## FOURTH CAUSE OF ACTION

### (INJUNCTIVE and DECLARATORY RELIEF, PURSUANT to UCL,

### Calif. Bus. & Prof. Code § 17200 et seq.)

(Against Defendants THE UNIVERSITY OF PHOENIX, INC.; APOLLO EDUCATION

GROUP, INC., and DOES 1 through 100)

61.   Plaintiff and on behalf of the Class herein incorporates and realleges by reference all preceding paragraphs, and each and every part thereof, in this Complaint with the same force and effect as though set forth at length herein.

62.   As a result of UOP's deceptive and fraudulent business practices as alleged above in Plaintiff's First, Second and Third Causes of Action of this Complaint, Plaintiff and the Class members pray this Court to enter judgment against Defendant as follows:

a)   For injunction under *Calif. Bus. & Prof. Code* §17200 et seq., and pursuant to this Court's equitable powers, to permanently enjoin UOP's conduct in violation of §17200 et seq.;

b)   For a declaration that UOP's conduct as alleged herein violates *Calif. Bus. & Prof. Code* §17200, and violates *California Private Post Secondary Education Act of 2009*.


## FIFTH CAUSE OF ACTION

## (BREACH OF FIDUCIARY DUTY)

(Against Defendants THE UNIVERSITY OF PHOENIX, INC.; APOLLO EDUCATION

GROUP, INC., and DOES 1 through 100)

63.   Plaintiff and on behalf of the Class herein incorporates and realleges by reference all preceding paragraphs, and each and every part thereof, in this Complaint with the same force and effect as though set forth at length herein.

64.   Defendant UOP owed a fiduciary duty to Plaintiff and the Class members as they represented and authority figure and were in a position of control over Plaintiff and the Class. Due to the unequal bargaining power between Plaintiff/Class and UOP and the Class members,

entrusted UOP to give beneficial and responsible advice regarding making career decisions and regarding making decisions as to the best educational choices. UOP as providers of college educational programs had an even greater fiduciary duty to prospective students since the demographic of these students and the Class are relatively naïve and unsophisticated consumers who justifiably relied on UOP for guidance in making such critical decisions that would have a huge impact on their careers.

65.     UOP breached its fiduciary duty owed to Plaintiff and the Class members by, amount other things, engaging in deceptive fraudulent conduct and the high pressure sales tactics against unsuspecting and trusting students, and by making misleading and deceptive and false statements, and/or by intentionally and knowingly omitting material information thereby inducing prospective students of the Class to enroll at UOP and to incur debt into the tens of thousands of dollars in order pay the exorbitant tuition for a substandard education.

66.     As a result of UOP's intentional omissions of material facts, false representations and fraudulent conduct, taking advantage of their apparent color of authority and breaching their fiduciary duty to the Class members, Plaintiff and the Class members have suffered damages in reliance on said conduct by UOP, as described herein.

**WHEREFORE,** the Plaintiff and the Class members prays for the following relief, to be determined by a jury, as follows:

1.      For Restitution in an amount according to proof to proof at trial, but in the excess of $75,000.00;

2.      For compensatory damages in an amount according to proof to proven at trial, but in the excess of $75,000.00, in order to compensate Plaintiff and the Class

members for said damages including tuition paid, loan debt incurred and reimbursement for all loan payments.

4.     For disgorgement of profits obtained by UOP and all Defendants, resulting from UOP's unfair, deceptive, unlawful and fraudulent business practices upon Plaintiff and the Class members;

5.     For injunctive relief enjoining, UOP from continuing said unfair, deceptive, unlawful and fraudulent business practice upon Plaintiff and Class members;

3.     For all attorney fees, costs and disbursements incurred in this suit;

5.     For attorneys fees and costs incurred pursuing this claim against Defendant pursuant to *Calif. Civil Code* §1021.5;

7.     For all applicable and appropriate punitive and exemplary damages.

8.     All other relief this Court deems fair and appropriate.


Plaintiff and on behalf of the Class, hereby demands a jury trial.

Dated: January 26, 2015

                          LAW OFFICE OF MICHAEL T. CARR



                          _____
                          Michael T. Carr
                          Attorney for Plaintiff, ASHLEY PERADES, and
                          the Class